TANNER JORDAN SMITH,  §
    Plaintiff,  §
                            §               CIVIL ACTION NO.
v.  §          4:24-CV-01099-SDJ-AGD
STATE of TEXAS  §
and  §
HAVEN BRIANN ISOM  §
    Defendants.  §

**DEFENDANT ISOM'S MOTION FOR SANCTIONS
SEEKING DISMISSAL WITH PREJUDICE**

Haven Isom ("Isom") presents her Motion for Sanctions Seeking Dismissal with Prejudice because Plaintiff is a vexatious litigant who needs a tailored pre-filing order,[1] pursuant to the Court's inherent powers under 28 U.S.C. § 1651(a) and/or FED. R. CIV. P. 11(c).

**Statement of Issues and Summary of Motion**

Whether Plaintiff is a Vexatious Litigant because within a 22 month period, Plaintiff filed, prosecuted, maintained, and lost at least 10 civil actions pro se In Forma Pauperis ("IFP"), which repeatedly and maliciously relitigated factual and/or legal issues already finally determined against him, including his family violence against Isom, the validity and/or terms of the Denton County Custody Court's Final Order (Doc. 1-1), and that Final Order's requirements for Plaintiff to have law-enforcement supervised access to Isom's 2-year old child, E.I. During Plaintiff's 22-month blitz, he filed a falsified Batterer's Intervention Prevention Program ("BIPP") completion certificate in the Custody Court and misrepresented to the Custody Court and a Collin County District Court that Plaintiff completed BIPP.

Whether this case should be dismissed with prejudice and a pre-filing order imposed against Plaintiff as the least severe sanctions necessary to deter his future misconduct because

---

[1] "[I]t is important for courts to hold serial litigants accountable to protect and manage its dockets but at the same time to protect other litigants' right to be heard. A federal court can do this by declaring the litigant vexatious and imposing a broader pre-filing injunction in the first instance when the litigant's history warrants such action." Samantha Rust, *The Vexatious Litigant Problem*, 62 HOUS. L. REV. 453, 462 (2024).

multiple Texas state court orders dismissing and finding Plaintiff's cases harassing and imposing monetary sanctions failed to halt his lawsuit terrorism. At last, a 10/31/24 Texas State Court Pre-Filing Order stopped Plaintiff's state court malfeasance. Plaintiff, however, resumed his misbehavior in Federal District Courts in Texas and Oklahoma when he filed this case, which for all the reasons in this Motion and Isom's Motion to Dismiss (Doc. 15) is repetitive, malicious, frivolous, groundless, lacks legal and evidentiary support, and is brought for harassment, needlessly increasing Isom's costs, or to extort access contrary to the terms of the final custody order found and affirmed in the child's best interests. So, Isom requests a sanction imposing a Pre-Filing Order prohibiting similar new cases in Oklahoma State Courts and any Federal Court without leave of court.[2]

### Procedural and Factual Basis Supporting Motion

Isom is a survivor of Plaintiff's family violence and mother of Plaintiff's infant daughter, E.I. This is Plaintiff's eleventh repetitive lawsuit in which he seeks to directly or collaterally attack the Custody Court's Final Order, retry finally decided facts and legal issues, or extort Isom to allow Plaintiff access to E.I. without the Final Order's protections, using frivolous, malicious, repetitive lawsuits in Texas state courts and also Federal Courts in Texas and Oklahoma, which he knows increase Isom's costs and needlessly waste courts' limited resources.

Plaintiff also filed in this Court a 2023 defamation suit that maliciously retries the same issues, including Plaintiff's domestic violence history, against Isom and her sister, Haley Isom, Case No. 4:23-cv-00874-SDJ-AGD, which remains in the initial screening phase. In light of this

---

[2] [B]ecause most pro se litigants cannot afford representation, it is unlikely they could afford to pay a monetary sanction imposed by a court. Therefore, the best option for a court is to impose a pre-filing injunction to prevent a pro se plaintiff from filing further litigation again." Samantha Rust, *The Vexatious Litigant Problem*, 62 HOUS. L. REV. 453, 463 (2024)(citing *Searcy v. Fort Worth ISD*, No. 4:23-CV-00992-P, 2024 WL 3293871, at *2 (N.D. Tex. Apr. 10, 2024) ("Here, because money is admittedly tight for Plaintiff, the Court is loath to issue monetary sanctions. But federal courts have clear authority to issue pre-filing injunctions in circumstances like this." (citation omitted)); *see also Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1115 (5th Cir. 1986) (cautioning that where monetary sanctions are ineffective in deterring vexatious litigation, a pre-filing injunction is a sanction available to the court).

Motion, Isom urges the Court recognize that case also is frivolous, repetitive and malicious.

***Plaintiff Lost His First IFP Lawsuit (Custody Case – the Focal Case).***

In the beginning, on 12/02/22, Plaintiff filed IFP in the 481st District Court of Denton County, Texas his petition against Isom, and Isom only, to adjudicate parentage and sought joint custody of the female child, E. I, Case no. 22-10324-481 (the "Custody Case").[3] A true and correct copy of Plaintiff's Custody Case Petition is attached as **Ex. 1**. After a 2-day bench trial, the Custody Court "judicially Pronounced and Rendered [that Final Order], on the record...**on 09/01/23**" (Final Order (Doc. 1-1) at p. 21), that Isom is E.I.'s sole managing conservator, Plaintiff is "parent possessory conservator" (Doc. 1-1 at p. 2), and provided required timing and conditions of Plaintiff's pathway to Texas law-enforcement supervised access to E.I. (Doc. 1-1 at p. 6-7),[4] all supported by Plaintiff's history or pattern of family violence against and physically abusing Isom (Doc. 1-1 at p. 2, 6). Put succinctly, the Custody and Appellate Court recognized "the record contains evidence of a substantive and probative character showing that [Plaintiff] committed acts of family violence against Mother," "[a]nd beyond [Plaintiff]'s physical abuse of Mother, the record contains additional evidence of [Plaintiff]'s general propensity towards violence. For example, the record reflects that in 2019 [Plaintiff] pleaded guilty to domestic violence against his ex-wife and served fifteen days in jail and that in May 2023, [Plaintiff] showed up uninvited to his ex-wife's sister's home and tried to hit her and her fiancé with his vehicle after they instructed him to leave." *See* Doc 15-4 at 21-22 and n.7.

On or around 05/30/24, Plaintiff filed a "Notice of Completion of Requirements for Access to Minor Child" in which he misrepresented to the Custody Court that he "attached all completion certificates to this filing." *See* certified copy of Plaintiff's "Notice of Completion",

---

[3] Isom asks the Court to take judicial notice of the Custody proceedings and all the court and county records identified in this Motion, all of which are incorporated herein by reference. FED. R. EVID. 201.

[4] The Custody Court required Plaintiff complete the following, and the Final Order rendered 09/01/23 gave deadlines: (1) Batterer's Intervention and Prevention Program (BIPP); (2) specific Co-Parenting Education classes; (3) a psychological evaluation, as specifically ordered.

which is attached as **Ex. 2,** at p. 1. With that document, Plaintiff attached a document that purported to bear The Chickasaw Nation seal, purported "to certify" that Plaintiff "has completed The Chickasaw Nation Batterer Intervention Program as of March 4, 2024", and purported to bear a signature of "Teresa Morgan, Domestic Violence Specialist, Governor's Office of the Chickasaw Nation." **Ex. 2** at p. 8 of 13 and also attached to Morgan Aff. Plaintiff, however, manufactured that document. Teresa Morgan, who is, in fact, The Chickasaw Nation's Program Manager of Violence Prevention Services, testified in her sworn Affidavit that The Chickasaw Nation did not issue that document, that signature is not hers, and she did not sign that document. Morgan Aff. (**Ex. 3**) at ¶ 3.

The Final Order also required Plaintiff to submit for psychological examination and evaluation by Dr. Jeff Siegel (https://siegelphd.com/), a Clinical Psychologist, and required Plaintiff to contact Dr. Siegel within 10 days after the 10/23/23 Final SAPCR Order to schedule the evaluation. Alternatively, ***if and only if*** (1) Plaintiff provided documents showing the education, credentials, and licenses of Dr. B.J. Boyd, whom Plaintiff asked serve as an alternate, and (2) ***if*** those matched Dr. Siegel's, then the Final Custody Court would permit Plaintiff to substitute Dr. B.J. Boyd for Dr. Siegel, by timely contacting and being examined and evaluated by Dr. Boyd. Final Order (Doc. 1-1) p. 16 (emphasis added).

Plaintiff offered no psychological evaluation by Dr. Siegel, and has not demonstrated Dr. B.J. Boyd's education, credentials, and licenses match Dr. Siegel's, as required by the Final Order. Instead, Plaintiff proffered only a putative Authorization for Disclosure and 12/03/23 "Progress Notes" (**Ex. 2** at p. 4-7) regarding patient "Tanner Eslinger" by a B.J. Boyd, not the court-ordered psychological evaluation. The "Progress Notes" fall short of Plaintiff's court-ordered psychological evaluation, the purposes of which include to identify any mental health challenges Plaintiff faces; any beneficial, regular counseling, medications, or other treatment programs; any mental health diagnosis requiring on-going care; and any danger or safety issues to the infant, E.I.

The Custody Court's Final Order required Plaintiff to pay to Isom various categories of child support, insurance, and reimbursements, ordered Plaintiff to pay Isom's trial court attorneys' fees that totaled $29,677.77, as well as her appellate attorneys' fees of $5,500.00, but Plaintiff has paid nothing at all. *See* Doc. 1-1 at 11.

Plaintiff appealed the Custody Final Order and lost, moved for rehearing en banc, lost again, and filed no petition with the Texas Supreme Court. *See* Doc. 15-4 and Doc. 15-5.

***At Last, Plaintiff Escaped the Custody Court Judge who Rendered the Final Order, and How He Did That Apparently, Simply is Chilling.***

On or around 10/14/24, the Denton County Sheriff's Office arrested Plaintiff (including apparent aliases of "Tanner Jordan Eslinger"; "Tanner Jordan Smith"; "Tanner J. Smith", and "Tanner Jorden Smith") under Warrant # JF24-102J1 on a charge of Terroristic Threat Against Peace Officer/Judge with an apparent offense date of 08/15/24. *See* **Ex. 4**, which is a true and correct copy of Plaintiff's publicly-available Denton County Jail Record of which Isom asks the Court take judicial notice under FED. R. EVID. 201. Plaintiff's Booking # was 644277. *Id.* Plaintiff apparently was released on a Security Bond of $20,000.00 with conditions. *See* **Ex. 5**, which is a true and correct copy of Plaintiff's publicly-available Denton County Bond Record of which Isom asks the Court take judicial notice under FED. R. EVID. 201. Also on or around 10/14/24, the Custody Court Judge of the 481st Judicial District Court of Denton County, Texas signed an Order of Voluntary Recusal from the Custody Case 22-10324-481, stating, "On today's date, the above referenced cause came to the attention of [the] Judge, Presiding Judge of the 481st Judicial District Court. [The] Judge, on her own Motion, finds there is just cause to recuse herself from this case. Therefore, the Court voluntarily recuses itself." *See* **Ex. 6**, which is a true and correct copy of the Custody Court Judge's 10/14/24 Order of Voluntary Recusal of which Isom asks the Court take judicial notice under FED. R. EVID. 201.

As demonstrated above, from and after the Temporary Orders hearing on 03/14/23, Plaintiff desperately sought to get out of the Custody Judge's Court, filing duplicate suits and

seeking relief contrary to the Custody Final Order (Doc. 1-1). Plaintiff's actions reveal his forum shopping motives and/or seeking to undermine or end-around the Custody Court's Orders. Plaintiff's 10/14/24 arrest reveals he apparently hit bottom and threatened the Custody Judge, leading to his arrest on a State Jail Felony (TEX. PENAL CODE § 22.07(c-1)) and the original Custody Judge's recusal. Though Plaintiff escaped the original Custody Judge, courts cannot condone the way he apparently did, and his vexatious litigation habits must finally be stopped.

***Plaintiff Lost his Second IFP Lawsuit (Duplicate Custody Case).***

On 03/17/23—the same day of the Custody Court's Temporary Orders (Doc. 15-1) that named Isom as Sole Managing Conservator and denied Plaintiff access—Plaintiff IFP filed a duplicate Custody Case, again seeking "joint custody and visitation." A certified copy of Plaintiff's duplicate Custody Case is attached as **Ex. 7**. His duplicate Custody Case no. 23-2301-481, likely much to Plaintiff's chagrin, was assigned to the 481st Judicial District Court in Denton County, the original Custody Court. On 03/23/23, Isom moved to dismiss that case, and on 04/04/23, the Custody Court dismissed that case. **Ex. 8** is a certified copy of the dismissal. Plaintiff filed no appeal.

***Plaintiff Lost his Third & Fourth IFP Lawsuits (Duplicate IIEDs in State and this Court).***

Clearly dissatisfied with the Custody Court's prior rulings, including the Temporary Orders and dismissal of his duplicate custody case, on 06/16/23 Plaintiff IFP filed another Denton County lawsuit against Isom accusing Isom of intentional infliction of emotional distress (IIED) related to Plaintiff being kept from E.I. although that estrangement resulted exclusively from the Custody Court's Temporary Orders (Doc. 15-1) and Plaintiff's failure to satisfy its pre-conditions. A certified copy of Plaintiff's IFP IIED Petition in Case no. 23-5182-442 is attached as **Ex. 9**. On 08/25/23, Isom filed a Motion to Dismiss Pursuant to the Texas Citizens Protection Act (TCPA), seeking dismissal with prejudice, attorneys' fees, costs, and sanctions against Plaintiff because Plaintiff's lawsuit sought to punish Isom for exercising her Constitutional Rights to free speech, freedom to associate, freedom to seek redress in the courts

for family violence and sole custody of E.I. On 08/31/23, Isom sent Plaintiff a notice of the dismissal hearing set 09/26/23 with the Custody Court Judge in his IIED Case.

On or around 09/06/23, Plaintiff impotently attempted to remove his IFP IIED Case from the Denton County Court to this Court. On 09/13/23, the Denton County District Clerk rejected Plaintiff's "Removal Notice" with the following comments, "Incorrect/Incomplete Info: Please resubmit with Required Forms. Please attach the documents showing proof of filing with the United States District Court Eastern Division. Thank you." A true and correct copy of Plaintiff's "Notice" is attached as **Ex. 10** together with the Clerk's Notification of Returned Service, and is incorporated herein by reference. It is well established that a plaintiff cannot remove his own state court lawsuit. 28 U.S.C. § 1441(a)[5] Next, on 09/13/23, Plaintiff, desperate to escape the Custody Judge and Isom's Dismissal Motion, sought to voluntarily dismiss, without prejudice, and temporarily end his IIED suit. Under Texas law, however, Plaintiff could not. *Villafani v. Trejo*, 251 S.W.3d 466, 468–70 (Tex. 2008) (when a statutory provision authorizing a motion for dismissal, sanctions, and attorney's fees exists to deter frivolous claims, "[r]emoving a defendant's ability to appeal a denial of [the motion for dismissal, sanctions, and attorney's fees] after a nonsuit frustrates this purpose; a claimant could simply nonsuit a meritless claim and later re-file the claim with impunity.")

In addition to trying to remove his own IIED suit and dismiss it without prejudice, Plaintiff IFP also filed a duplicate, malicious IIED lawsuit against Isom in this Court on 09/08/23. That duplicate EDTX IIED case was assigned to this Court in Case No. 4:23-cv-00805-SDJ-KPJ and later dismissed on 09/21/24. This Court's 2024 dismissal, however, surely entered without knowledge of Plaintiff's vexatiousness and without knowledge of the State Court's 09/26/23 dismissal with prejudice entered a year before in Plaintiff's mirror state IIED.

---

[5] "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants...."; *Chicago, R. I. P. R. Co. v. Stude*, 346 U.S. 574, 580 (1954) ("... railroad is the plaintiff under 28 U.S.C. § 1441(a) and cannot remove.")

Specifically, on 09/26/23, the state IIED Court granted a Final Judgment of Dismissal with Prejudice Awarding Attorneys' Fees and Costs and Sanctions. A certified copy of the Final Judgment is attached as **Ex. 11**. That Final Judgment found that (1) Isom was a survivor of family violence committed by Plaintiff, (2) Plaintiff filed that case for an improper purpose, including to harass or cause unnecessary delay or increase Isom's litigation costs, and (3) Isom was awarded $8,364.50 in attorneys' fees, $16,729.00 in sanctions, plus costs. **Ex. 11** at 2. Plaintiff filed no appeal and paid none of Isom's awarded fees or sanctions.

### *Plaintiff Lost his Fifth IFP Lawsuit (Modification of Custody Final Order).*

On 05/16/24, Plaintiff, pro se, filed his Motion to Modify Supervision Specifications, seeking to remove the Custody Court-ordered requirement that such access be supervised by Texas law enforcement.[6] A true and correct copy of Plaintiff's Motion to Modify is attached as **Ex. 12**. On 06/18/24, the Custody Court entered a final Order Denying Plaintiff's Motion to Modify Supervision Specifications. A certified copy of the Order Denying Plaintiff's Motion to Modify Supervision Specifications is attached as **Ex. 13**. Plaintiff filed no appeal.

### *Plaintiff Lost his Sixth IFP Lawsuit (Enforcement of Custody Final Order).*

On 05/20/24, Plaintiff, pro se, signed and filed his Amended Motion to Enforce, seeking from the Custody Court enforcement of the Final Order to grant him Texas law enforcement supervised access to E.I., again misrepresenting that he completed the required BIPP and psychological evaluation pursuant to the Final Order, all despite the fact that Plaintiff has not completed the Court-ordered pathway to supervised access. A true and correct copy of Plaintiff's Amended Motion to Enforce is attached as **Ex. 14**. Seeking "to enforce or modify a child support order, other than through a contract action, is a 'suit affecting the parent-child relationship.'" *Fleming v. Easton*, 998 S.W.2d 252, 255 (Tex. App.—Dallas 1999, no writ). On 06/18/24, the Custody Court signed a final Order Denying Plaintiff's Motion to Enforce. **Ex.**

---

[6]  Texas Family Code § 156.004 provides motions to modify are treated as original lawsuits.

**15** is a certified copy that Order Denying Plaintiff's Motion to Enforce. Plaintiff filed no appeal.

***Plaintiff Lost his Seventh through Tenth IFP Lawsuits ("Child Stealing").***

In July 2024, Plaintiff IFP filed 4 lawsuits against one defendant each: Haven Isom, her sister, Haley Isom, her mother, Kim Isom, and her father, Tommy Isom, in the 296th District Court of Collin County, Texas. Certified copies of each "Child Stealing" Petition, respectively, are attached hereto as **Ex. 16** through **Ex. 19**. In those, Plaintiff IFP sought damages, alleging interference (Plaintiff maliciously phrased it, "Child Stealing") with his right of possession or access to E.I. As shown above, Plaintiff had no possession right and had not then, or now, earned his pre-conditioned right of Texas law-enforcement supervised access to E.I.

Each Isom family member defendant filed a motion under Texas's Vexatious Litigant Statute, TEX. CIV. PRAC. & REM. CODE § 11.001, *et seq.*, seeking dismissal with prejudice and a pre-filing injunction, among other relief. After a combined hearing held on 10/29/24, with timely notice to Plaintiff and an opportunity to be heard, the 296th District Court in Collin County, Texas (the "State District Court") on 10/31/24 entered 4 final Orders. Certified Copies of each such final Order, respectively, is attached hereto as **Ex. 20** through **Ex. 23**. In those 10/31/24 Orders, the State District Court dismissed these 4 cases with prejudice, designated Plaintiff a vexatious litigant, awarded sanctions against Plaintiff, and, very importantly, imposed a pre-filing order on Plaintiff, under all his various aliases, prohibiting him from filing, pro se, a new litigation in any Texas State Court without first seeking and securing written permission from an appropriate local judge, with written advance notice to each target defendant, and encouraging the local administrative judge to condition permission, if any, on Plaintiff first posting security to assure payment of target defendant's reasonable expenses incurred, including costs and attorney's fees. **Ex. 20 – 23** at pp. 1-3.

Since entry of those 10/31/24 Pre-Filing Orders, Plaintiff has not successfully filed a new lawsuit against Isom or her family other than the instant lawsuit, which Plaintiff IFP originally filed in the Western District of Oklahoma (Doc. 1). When he filed this lawsuit on

12/02/24, Plaintiff previously filed at least 2 cases in the EDTX, knowing Isom resided in this District at those times and knowing she had Texas attorneys helping her. So, it seems apparent that Plaintiff first filed this case in WDOK because that court is (a) closer and more convenient to him than EDTX with which he was familiar and (b) clearly far from and manifestly inconvenient to Isom, a Texas resident. Certainly, as the WDOK court recognized in its Order of Transfer (Doc. 8), WDOK was without proper venue. Accordingly, Isom asks this Court to impose a tailored Federal and Oklahoma State Court pre-filing order as specified below in Requested Relief. So far, nothing less, including sanctions against Plaintiff--monetary, contempt or confinement—afforded Isom or courts protection from his vexatious litigiousness.

**Plaintiff Admits His Litigation Motives Are to Harass & Extort Unearned Access**

Plaintiff, by his own acts and admissions, abused the court systems in Texas, WDOK, and EDTX, filing case after case after case, as he inflicts litigation terrorism upon Isom, running up her and her family's costs, defending against his malicious attempts to relitigate the Custody Final Order, and/or hoping to extort Isom into granting him access to E.I., without the Custody Final Order's pre-conditions and safety protections, all found to be in E.I.'s best interests.

During the Custody bench trial on 09/01/23, Plaintiff testified he takes no responsibility for having no contact with E.I.; instead, Plaintiff testified "it's all Haven's fault that he has not had contact" with E.I. *See* Doc. 15-2 (Reporter's Record Vol. 6 at $13/22 - 14/5$). On or around 9 or 10pm on 09/15/23, as the IIED final hearing and the Custody trial approached, Plaintiff sent Isom multiple AppClose messages, saying the following:

> I'll see you in court soon
>
> Your poor parents must be worn thin
>
> [you have] bankrupted your parents
>
> This battle will continue for eternity until you choose to lay down your arms
>
> If I catch one more wiff of you on those pages defaming me…I'm filing another lawsuit on top of the 4 you're already dealing with
>
> Be checking mail for some stuff from the federal court of the eastern district of texas

*See* **Ex. 24**.[7]

On 08/12/24, Plaintiff sent an email to Adam Seidel, an attorney for Isom and her immediate family members in his so-called four "Child Stealing" cases. Plaintiff's email openly threatened to keep filing lawsuit after lawsuit seeking access to E.I. He threatened despite failing to satisfy the Final Order's access pre-conditions. Specifically, Plaintiff said in his email:

> I will dismiss my suits for interference if the interference ceases and I am allowed my court ordered access to my child.
>
> Otherwise, please inform your clients that I intend to keep suing them for every new instance of interference after a suit for interference is disposed of.
>
> Regards,
> Tanner Smith

*See* Affidavit of Adam Seidel, **Ex. 25**, attached to and incorporated into this Motion.

Although Plaintiff filed Pauper's Affidavits with this ICWA case and also in his 10 lost and 1 still pending-in-screening IFP lawsuits, Plaintiff pays court and attorneys' fees when motivated by self-interest. For his Final Order appeal, he requested the trial transcript at no charge. When the Court Reporter contested Plaintiff's alleged indigency, Plaintiff chose not to prove his indigency at the hearing. Instead, Plaintiff dismissed his Pauper's Affidavit and paid at least $2,195.00 for the transcript, as shown by the Reporter's Certificates. *See* Doc. 15-2 at 96 and Doc. 15-3 at 153. Plaintiff retained counsel for the Custody trial and appeal. *Id.*

<strong>Argument and Authorities</strong>

**The Court Should Declare Plaintiff a Vexatious Litigant and Prohibit New Suits on Decided Issues in Oklahoma State Court or Any Federal Court.**

    1.    **The All Writs Act Grants this Court Such Power, In Addition to This Court's Inherent Power.**

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. "Under the All Writs Statute, a federal court has the

---

[7] The Final Order provides that Plaintiff's AppClose messages "shall be presumed to be authentic and not subject to hearsay." *See* Final Order (Doc. 1-1 at p. 7 of 22).

power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court." *New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 879 (5th Cir. 1998) (citing *Kinnear–Weed Corp. v. Humble Oil & Refining Co.,* 441 F.2d 631, 637 (5th Cir. 1971). Under the Act and a court's inherent authority, a court may issue an order enjoining future filings to protect the court's judgments and jurisdiction and to deter vexatious filings. *See Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 360 (5th Cir. 1986)(affirming injunction against future filings without leave of court and explaining the court's power to do so "flows not only from various statutes and rules relating to sanctions, but from the inherent power of the court" (footnote omitted); *see also Texas v. Real Parties in Interest,* 259 F.3d 386, 391 (5th Cir. 2001) (providing a court may issue orders under the All Writs Act where "necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued"). "Although the Anti-Injunction Act is an absolute bar to any federal court action that has the effect of staying a *pending* state court proceeding unless the action falls within a designated exception," it does not preclude injunctions against prospective state court actions." *Newby v. Enron Corp.,* 302 F.3d 295, 301 (5th Cir. 2002)(citing *Dombrowski v. Pfister,* 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Phillips v. Chas. Schreiner Bank,* 894 F.2d 127, 132 n. 8 (5th Cir. 1990)) (emphasis added).

"In determining whether it should impose a pre-filing injunction or should modify an existing injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC,* 513 F.3d 181, 189 (5th Cir. 2008) (quoting *Cromer v. Kraft Foods N. Am., Inc.,* 390 F.3d 812, 818 (4th Cir. 2004)). The Fifth Circuit agrees that "the traditional standards for injunctive relief, i.e. irreparable injury and inadequate remedy at law,

do not apply to the issuance of an injunction against a vexatious litigant." *Baum*, 513 F.3d at 189 (citing *Martin-Trigona v. Lavien (In re Martin-Trigona)*, 737 F.2d 1254, 1262 (2d Cir. 1984)).

As shown above, Plaintiff has repeatedly—at least 12 times now, 9 times in Texas state court[8] and 3 times in this Court and/or the Western District of Oklahoma—filed claims seeking to punish or harass Isom and retry facts and/or law finally determined after a contested trial in the Custody Court and its Final Order (Doc. 1-1), which was fully and finally affirmed on appeal. Plaintiff lost 10 of those 12 duplicative suits within 22 months, leaving only this Case and Case No. 4:23-cv-00874-SDJ-AGD in this Court that remains in the IFP screening phase. "Raising a patently frivolous legal argument and threatening continued meritless litigation is the definition of bad faith." *Terra Partners v. Rabo Agrifinance, Inc.*, 504 Fed. App'x. 288, 290 (5th Cir. 2012). Courts in this circuit have enjoined future lawsuits where there was a high likelihood a party would collaterally attack the court's final judgment. *See Hill v. Washburne*, 953 F.3d 296, 310 (5th Cir. 2020) (affirming a district court's injunction prohibiting a party from pursuing future litigation in "any court" on issues already litigated and decided).

"That his filings are pro se offers [Plaintiff] no impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." The Fifth Circuit has long recognized, "IFP status is not a license to harass. As the Tenth Circuit[9] has noted:

> 'a person who is an indigent has no constitutional right to access to the courts to prosecute an action that is frivolous and malicious. And although he has obtained leave to prosecute such an action without prepayment of costs or giving security therefor, if after he has commenced the action the court becomes satisfied that the action is frivolous and malicious, it may dismiss the action and adjudge that the costs of the action shall be assessed against him. That necessarily follows, because such indigent person had no right to prostitute the processes of the court by bringing a frivolous and malicious action.'"

---

[8] This Court may properly consider Plaintiff's conduct in state court when determining whether he is acting in bad faith. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008).

[9] As this Court well knows, but Plaintiff may not, Oklahoma Federal Courts answer to the Tenth Circuit.

*Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986) (quoting *Duhart v. Carlson*, 469 F.2d 471, 478 (10th Cir. 1972), *cert. denied*, 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973)).

### 2. FED. R. CIV. P. 11 Supports Dismissal With Prejudice and a Pre-Filing Order Preventing Similar Suits in OK State Court or Any Federal Court.

In addition to the All Writs Act, FED. R. CIV. P. 11 provides the Court authority to dismiss with prejudice and enjoin future lawsuits because, as shown above and in Isom's Motion to Dismiss for Failure to State a Claim, Plaintiff's claims are frivolous, malicious, and harassing. Federal Rule of Civil Procedure 11 authorizes a court to impose sanctions on a party who files a pleading for an improper purpose, such as to harass the opposing party, delay the proceedings, or increase the expense of litigation. FED. R. CIV. P. 11(b), (c). Sanctions under Rule 11 may follow if the Court finds a document was presented for an improper purpose, FED. R. CIV. P. 11(b)(1), (2); the claims or defenses of the signer are not supported by existing law or by a good-faith argument for an extension or change in existing law, FED. R. CIV. P. 11(b)(2), (3); or the allegations and other factual statements lack evidentiary support or are unlikely to find such support after a reasonable opportunity to investigate, FED. R. CIV. P. 11(b)(3). The purpose of the rule is to "deter baseless filings in district court", *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)(superseded by statute/Rule on other grounds), and "to spare innocent parties and overburdened courts from the filing of frivolous lawsuits", *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987). After notice and opportunity to respond, a court finding a Rule 11(b) violation may impose sanctions. FED. R. CIV. P. 11(c)(1). Rule 11 sanctions may include monetary and injunctive sanctions, *Farguson v. MBank Houston, NA.*, 808 F.2d 358, 359-60 (5th Cir. 1986), and even dismissal with prejudice, *see Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652,657 (7th Cir. 2003) (affirmed district court's dismissal with prejudice after finding plaintiff filed with her complaint falsified documents to support her racial discrimination claims). Courts have a duty to impose the least severe sanction sufficient to deter future bad conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993); FED. R. CIV. P. 11(c)(4).

As shown in the Procedural and Factual Basis section above, Plaintiff is unmoved by mere dismissals, whether alone or combined with monetary sanctions. Plaintiff has demonstrated the least severe sanction to deter Plaintiff's future vexatiousness is dismissal with prejudice together with a Pre-Filing Order as specified below in the Requested Relief section.

Important to Plaintiff's latest frivolous lawsuit, this ICWA Case, Plaintiff urged in his appeal that the Custody Final Order was tantamount (or "de facto", as he phrases it in his Complaint [Doc. 1]) to complete denial of access or possession of E.I., *i.e.*, a termination of his parental rights, and the Appellate Court disagreed: "contrary to Father's contentions, the final order merely conditions his rights of possession and access; it does not completely deny them. Thus, the authorities cited by Father addressing the complete denial of a parent's access to or possession of a child are inapposite." *See* Doc. 15 at 7-9 and Doc. 15-4 at 21 n. 6. Moreover, the Appellate Court's Opinion is replete with Texas Family Code provisions and caselaw that demonstrate limits or restrictions a custody court must place on a father with a history of domestic violence. Long before he filed this case, Plaintiff therefore knew that his parental rights were **not** terminated, no request ever was made to terminate them, and there was no request or order for foster care or adoption, basis for ICWA statutory standing. Nevertheless, as he is highly prone to do, Plaintiff filed IFP this latest ICWA case repeating his defeated arguments, and once again attacks the Custody Final Order although he legally and factually lacks statutory standing as shown in Isom's Motion to Dismiss (Doc. 15). Finally, also as shown in Isom's Motion to Dismiss, the federal cases Plaintiff's Complaint cites arguing that federal courts recognize "de facto" termination each and all are wholly inapposite. *See* Doc. 15 at 8-9.

### Requested Relief

Isom asks the Court sanction Plaintiff, dismiss this case with prejudice, find Plaintiff is a vexatious litigant who frequently, repeatedly, and maliciously pursues baseless litigation for harassment or other improper purpose; and Order that that Plaintiff Tanner Jordan Smith aka Tanner J. Smith aka Tanner Jordan Eslinger aka Tanner Jorden Smith, and also anyone acting

at his behest, shall not file pro se or In Forma Pauperis a new pleading, case, petition, motion, request, or suit relating, touching or concerning (a) the Final Order signed 10/23/23 in Case no. 22-10324-481 by the 481st District Court of Denton County, Texas ("Final Order") or (b) custody, possession or access to Plaintiff's young daughter, E.I. or (c) Plaintiff's rights or obligations under the Final Order, in any Oklahoma State Court or any Federal Court, without first requesting in writing and receiving written permission to file from either (1) a local presiding Judge in Oklahoma if Plaintiff plans to sue in a non-Federal Court in Oklahoma, or (2) a United States District Judge or United States Magistrate Judge if Plaintiff plans to file in a Federal Court, and together with Plaintiff's written request, Plaintiff must provide to such Judge true, correct, and complete copies of (i) the 10/31/24 Order signed by the 296th District Court of Collin County, Texas, (ii) this Order signed by this Court, and (iii) a notarized affidavit in which Plaintiff certifies that the matters to be raised in the suit have never been raised or disposed of in any state or Federal Court; and if such Judge grants leave for Plaintiff to file, then Plaintiff, contemporaneously with such new filing, must post a bond or cash deposit of at least $18,000 for each defendant to secure each defendant's fees and costs.[10]

Isom also asks the Court grant her all other relief, at law or in equity, to which she is entitled.

---

[10] Such amount is reasonable and consistent with Local Rule 65.1(b) given Isom's awarded fees in the Custody Case totaled $29,677.77 after a trial, and Isom's awarded fees against Plaintiff in the State IIED totaled $8,364.50 that Isom won early and before an answer, finally concluding that suit without discovery, but Plaintiff has paid none. The 10/31/24 Orders also awarded sanctions against Plaintiff totaling over $16,000.00 in attorneys' fees and costs, only about 3 months after the Petitions were filed, after answers and various dispositive and other motions were prepared and filed, including the vexatious litigant motions and hearings, but before any discovery, summary judgment, or trial, and Plaintiff has paid none. Accordingly, Isom asks the Court require Plaintiff to post $18,000 in cash security for each target defendant in any new permitted matter.

Respectfully submitted,

/s/ V. Elizabeth Kellow
V. Elizabeth Kellow
State Bar No. 11213750
EKellow@MKTexasLaw.com
**MARSHALL & KELLOW, LLP**
4099 McEwen STE 400
Dallas, Texas 75244
Telephone:  (214) 956-0200
Telecopy:  (214) 615-1390
**ATTORNEY FOR HAVEN BRIANN ISOM**

**CERTIFICATE OF SERVICE**

I certify on 03/05/25, a true and correct copy of this document with its attachments was served by email to pro se Plaintiff at the email address to which he consented to receive email service.

I also certify that on or around 03/10/25, pro se Plaintiff filed his Response (Doc. 20) to this Motion.

And I further certify that on 03/27/25, consistent with Rule 11(c)(2), this document and its attachments are being filed and served using the Court's ECF system, which will electronically serve Plaintiff and any other counsel of record, and otherwise, I will serve it consistent with Rule 5.

/s/ V. Elizabeth Kellow